912 A.2d 226

George GOODS, Appellee,

v.

**PENNSYLVANIA BOARD OF PROBATION
AND PAROLE, Appellant.**

Supreme Court of Pennsylvania.

Submitted March 28, 2006.

Decided Dec. 27, 2006.

Victoria Sellitto Freimuth, Esq., Arthur R. Thomas, Esq., for Board of Probation and Parole.

Frederick R. Gutshall, Esq., James M. McClure, Esq., Huntingdon, for George Goods.

BEFORE: CAPPY, C.J., and CASTILLE, NEWMAN, SAYLOR, EAKIN, BAER and BALDWIN, JJ.

## OPINION

Justice CASTILLE.

The question presented on appeal is whether the Pennsylvania Board of Probation and Parole ("Board") properly deemed that a state prisoner's failure to challenge the timeliness of an administrative parole revocation hearing[1] at the hearing itself constitutes a waiver of the timeliness question under the contemporaneous objection/issue preservation principles animating *Dilliplaine v. Lehigh Valley Trust Company*, 457 Pa. 255, 322 A.2d 114 (1974) and its progeny. For the reasons that follow, we see no impediment in the Board, in the exercise of its discretion, adopting a *Dilliplaine*-like rule requiring issue preservation at the revocation hearing level. *Dilliplaine* itself, however, does not command that waiver result; we therefore reject the Board's claim that the Commonwealth Court violated *Dilliplaine* in deeming appellee's argument to have been preserved. Accordingly, we affirm the order below.

On December 5, 1984, following conviction in Philadelphia County for robbery[2] and possession of an instrument of a crime,[3] the Honorable Angelo Guarino sentenced appellee to a five to fifteen year term of imprisonment, thus placing him in the control of the state prison system. On May 26, 1989, appellee was released on parole. He was then recommitted as a technical parole violator and reparoled five times, the final parole occurring on November 11, 1999, when he was released to an approved community correction center. Four months later, however, on March 8, 2000, appellee absconded from that facility and he was declared delinquent by the Board, effective that date.

1. The Board defines a "revocation hearing" as a "hearing held to determine whether a parolee should be recommitted as a convicted violator." 37 Pa.Code § 61.1.

2. 18 Pa.C.S. § 3701.

3. 18 Pa.C.S. § 907.

On May 3, 2002, appellee was arrested on new criminal charges. The Board issued a decision, recorded on June 28, 2002, which recommitted appellee to a state correctional institution as a technical parole violator to serve the unexpired term of his original prison sentence, a term of five months and eight days. The order also indicated that appellee was to be detained pending the disposition of his new criminal charges.[4]

The new charges were disposed of on December 19, 2002, when appellee entered a negotiated plea of guilty to possession of a controlled substance and possession with intent to deliver a controlled substance, and was sentenced to a three year term of probation. The next documented action is a warrant to commit and detain, which was issued by the Board on November 6, 2003.[5]

On or around November 19, 2003, appellee was arrested on the warrant. Appellee waived a hearing before a hearing panel of the Board so as to ensure a faster resolution of the detainer, and a revocation hearing was scheduled for December 1, 2003. That hearing was twice continued at appellee's request and ultimately was held on January 5, 2004 at SCI–Graterford. Appellee, who was represented by counsel, forwarded no objection to the timeliness of the revocation hearing, and thus the hearing examiner heard no evidence on that point. Appellee also did not dispute that he violated his parole nor did he dispute the evidence against him, except to question whether his new conviction was considered "like a summary offense." By order recorded April 13, 2004, the Board recommitted appellee to a state correctional institution

4. Pursuant to 61 P.S. § 331.21a(a.1), the filing of new charges against a parolee "shall constitute an automatic detainer," which permits the parolee "to be taken into and held in custody." *See Martin v. Pa. Bd. of Prob. and Parole*, 576 Pa. 588, 840 A.2d 299, 303 (2003) ("if an offender is subsequently arrested while on parole, an automatic Board detainer is applied, which subjects the offender to possible consequences for violations of parole that will be decided by the Board in a subsequent proceeding").

5. The Board's September 7, 2004 letter, issued in response to appellee's request for administrative relief, states that appellee was incarcerated at another facility that was outside the jurisdiction of the Department of Corrections until November 20, 2003, when he was returned to SCI–Graterford.

as a technical parole violator to serve twelve months of backtime. Appellee was also formally ordered to serve his unexpired term of five months and eight days as a technical parole violator. Appellee's new maximum parole violation date was calculated as April 19, 2008.

By letter dated May 5, 2004, appellee's counsel, who was other than his revocation hearing counsel, requested administrative relief from the Board. Appellee alleged that the Board had failed to conduct a timely parole revocation hearing,[6] failed to provide adequate notice of the hearing,[7] and failed to properly credit his previous time served. On September 7, 2004, the Board issued a letter denying appellee's request for administrative relief. The Board found that appellee had waived his objections to timeliness and notice by failing to raise them at the revocation hearing itself. Letter, at 1 (*citing Newsome v. Pa. Bd. of Prob. and Parole*, 123 Pa.Cmwlth. 413, 553 A.2d 1050 (1989)). In the alternative, the Board found that the timeliness and notice issues failed on the merits. The Board also found that appellee's time credit was properly calculated.

Appellee then appealed to the Commonwealth Court, raising the timeliness and time credit issues, but abandoning the notice issue. A divided panel vacated and remanded in an unpublished opinion. The panel majority summarily determined that appellee properly preserved the issue of whether his revocation hearing was timely by raising it in his May 5 letter seeking administrative relief, citing authority for the supposed proposition that a parole violator can raise an issue either at the hearing or in his request for administrative relief. Slip. op., at 5, (*citing Dear v. Pa. Bd. of Prob. and Parole*, 686 A.2d 423 (Pa.Cmwlth.1996) and *Newsome* ). On the merits,

6. *See* 37 Pa.Code § 71.4 (revocation hearing must be held within 120 days from date Board received official verification of plea of guilty or nolo contendere or of guilty verdict); *id.* at § 71.5 (120 day requirement may be extended if parolee or counsel is unavailable, parolee or counsel seeks continuance, the Board seeks reasonable or necessary continuance, parolee changes decision regarding waiver of panel, or event occurs which is beyond Board's control).

7. *See* 37 Pa.Code § 71.4.

the majority noted that "the facts surrounding this issue are disputed and have not been sufficiently developed to allow for a determination as to whether the revocation hearing was timely." Thus, the majority remanded to the Board to conduct an evidentiary hearing and determine the merits of the timeliness issue. The majority also remanded appellee's time credit challenge for an evidentiary hearing. *Id.* at 7–8.

The Honorable Renee Cohn Jubelirer authored a concurring and dissenting memorandum opinion, agreeing with the remand to address the time credit issue, but dissenting with respect to the timeliness of the revocation hearing. In the dissent's view, appellee waived the timeliness issue because he did not raise it at the revocation hearing. The dissent opined that raising the timeliness issue for the first time in an administrative appeal is insufficient because "1) resolving this issue requires the development of a factual record, which occurs *only* at the hearing stage and not at the Board review level, and 2) where this issue is raised, the burden shifts to the Board to show that the hearing was timely." Slip op., at 2. The dissent also stressed the salutary purpose served by requiring objection at the administrative hearing level, citing for support this Court's decision in *Wing v. Commonwealth Unemployment Comp. Bd. of Review*, 496 Pa. 113, 436 A.2d 179 (1981), where we noted:

> The *Dilliplaine* and [*Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974)] rationales are perfectly apposite in administrative law cases as well: the administrative law tribunal must be given the opportunity to correct its errors as early as possible; diligent preparation and effective advocacy before the tribunal must be encouraged by requiring the parties to develop complete records and advance all legal theories; and the finality of the lower tribunals' determinations must not be eroded by treating each determination as part of a sequence of piecemeal adjudications.

436 A.2d at 180–81. The dissent further noted that this Court had applied this waiver rule in workers' compensation cases, *see Smith v. Workmen's Compensation Appeal Bd.; Appeal of Concept Planners & Designers*, 543 Pa. 295, 670 A.2d 1146

(1996), and reasoned that "[p]arole proceedings, like those in the workers' compensation setting, . . . involve a two-tier structure," with the first level consisting of the hearing before the revocation panel, which serves as fact-finder, and the second level consisting of administrative review, which is limited to reviewing for substantial evidence, errors of law, and constitutional violations. After noting other examples where the Commonwealth Court had applied the waiver rule in the administrative setting, the dissent saw no reason why the waiver rule should not apply in the parole revocation context as well. In contrast, the dissent concluded, the panel majority's ruling disregarded *Wing*, "discounted the concept of finality," "disregarded the notion that the Board should have been given an opportunity to correct any errors 'as early as possible,' " and "excused pre-hearing preparation that was less than diligent." Slip op., at 4.

The Board appealed, claiming that the Commonwealth Court's decision was inconsistent with *Dilliplaine*. This Court accepted review of that question.

The Board claims that the decision below is contrary to this Court's teaching in *Dilliplaine*, 457 Pa. 255, 322 A.2d 114, and its progeny, which establish that in order to preserve a claim for appeal the appellant must forward a contemporaneous objection at the appropriate time. In the Board's view, the Commonwealth Court "had no power" to approach the question of administrative waiver in a manner that "conflicts with" *Dilliplaine*. The Board notes that the appellant in *Dilliplaine* failed to object at trial (to an alleged error in jury instructions), first raised his issue in a motion for a new trial, and this Court held that such belated action was insufficient to preserve the issue. The Board analogizes the administrative appeal procedure for parole revocation decisions to the trial/post-trial paradigm in court proceedings. Thus, the Board argues, the purpose of post-trial motions is to permit the trial court to correct an error before appellate review commences, while the purpose of the Board's administrative appeal is to review administrative decisions and correct any errors before the parties appeal to the courts. The Board maintains that

neither the post-verdict motion process nor the administrative appeal process is designed to allow an appellant to "void a waiver of a claim." Brief for Appellant, at 14. The Board also notes that, in the analogous context of non-administrative appeals from probation revocation decisions made by trial courts in the first instance, the Superior Court has held that objections to the speediness of the revocation hearing have to be contemporaneously forwarded, and waivers of such objections cannot be undone by belated presentations in motions for reconsideration. *See Commonwealth v. Marchesano,* 348 Pa.Super. 387, 502 A.2d 597 (1985); *Commonwealth v. Ziegler,* 286 Pa.Super. 26, 428 A.2d 220 (1981). In the Board's view, the same rule logically should obtain here.

The Board adds that the panel majority's overlooking the waiver in the parole revocation setting is "unprecedented" and "profoundly misconstrues the purpose of [the] regulatory scheme for administrative appeals." That scheme, the Board argues, is designed to provide for agency review and correction of alleged record-based errors made at the revocation hearing, before judicial review may commence. The scheme is not designed to provide a parolee a "safety net" or "second chance" to raise claims he could have raised at the revocation hearing, but did not. Indeed, the Board maintains, allowing a claim to be raised for the first time upon administrative appeal converts the revocation proceeding into a mere "dress rehearsal" and also overlooks the fact that such new claims cannot be adequately reviewed on appeal, since there will be no relevant record. The Commonwealth Court's mandated administrative review paradigm, the Board argues, will "require the Board to squander its resources by holding another hearing" on a claim that could have been raised at the first hearing. Indeed, the Board notes, if a claim may be raised for the first time upon administrative appeal, the administrative process could go on *ad infinitum: i.e.,* hearing, appeal with a new claim, remand to hear the new claim, appeal with a new claim, remand for a hearing, *etc.*

Finally, the Board adds that overlooking the failure to raise a claim at the hearing level also ignores the fact that the scope

of administrative review is not *de novo*, but instead is limited to an examination of whether the revocation decision "is supported by substantial evidence, an error of law has been committed or there has been a violation of constitutional law." 37 Pa.Code § 73.1. The Board submits that it is "impossible to apply this scope of review" to a claim that the revocation hearing was untimely if the claim was not forwarded below.

Appellee counters that Commonwealth Court authority requires only that a parole revocation issue be raised before the Board either at the hearing level or on administrative appeal. Brief for Appellee, at 3, *citing Dear; Newsome;* and *Wallace v. Pa. Bd. of Prob. and Parole,* 119 Pa.Cmwlth. 508, 548 A.2d 1291 (1988). Because he raised his timeliness issue on administrative appeal, appellee asserts that he adequately preserved it. Appellee also argues that the Board's reliance upon the *Dilliplaine* line of cases is "fundamentally misplaced" because those cases involve issue preservation at jury trials, and not the comparatively informal administrative proceeding at issue here. Turning to the Board's reliance upon the issue preservation doctrine in judicial probation revocation cases, appellee argues that administrative parole revocation is different because the Board's regulations set forth specific time requirements, prejudice resulting from untimely parole revocation hearings is presumed, and the Board has an "affirmative duty and burden" to prove that the hearing was timely once a timeliness challenge has been raised.

Appellee also argues that parole revocation hearings are "unique," because they are not subject to all of the provisions of the Administrative Agency Law, *citing Davis v. Pa. Bd. of Prob. and Parole,* 85 Pa.Cmwlth. 278, 481 A.2d 714, 717 (1984), and because the Board operates as "prosecutor, finder of fact and imposer of sanctions." Finally, appellee submits that it is appropriate to raise the issue of the timeliness of the hearing for the first time upon administrative appeal because the Board has all of the information necessary to resolve the issue in its possession. In appellee's view, the record contains all of the necessary dates (*i.e.,* the date of the detainer and the dates of all continuances) for the Board to determine whether

the hearing was held within the requisite 120 days. Appellee goes so far as to say that "the Board's function in addressing this issue is identical whether raised at the hearing or on administrative appeal." Appellee's Brief, at 6.

In its reply brief, the Board views appellee's argument that the Board had all of the information necessary to decide his claim as asking the Board to take official notice of the information in its files. The Board claims that the Commonwealth Court has held that the Board does not have such power. *See Johnson v. Pa. Bd. of Prob. and Parole*, 890 A.2d 45 (Pa.Cmwlth.2006); *Sanchez v. Pa. Bd. of Prob. and Parole*, 151 Pa.Cmwlth. 335, 616 A.2d 1097 (1992); *Grubbs v. Pa. Bd. of Prob. and Parole*, 85 Pa.Cmwlth. 464, 481 A.2d 1390 (1984). The Board further contends that Commonwealth Court precedent requires the Board to produce the evidence necessary to prove the timeliness of the revocation hearing at the revocation hearing itself. Therefore, the Board concludes, if a prisoner is permitted to raise his untimeliness claim in his administrative appeal, the Board would be required to hold another hearing, resulting in an appeal procedure that "makes no sense." Board's Reply Brief, at 5.

 The standard of review applicable to courts hearing administrative appeals is set forth in the Administrative Law and Procedure Act, 2 Pa.C.S. § 101 *et seq.*, which provides in pertinent part:

The court shall hear the appeal without a jury on the record certified by the Commonwealth agency. After hearing, the court shall affirm the adjudication unless it shall find that the adjudication is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of Subchapter A of Chapter 5 (relating to practice and procedure of Commonwealth agencies) have been violated in the proceedings before the agency, or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence. If the adjudication is not affirmed, the court may enter any order authorized by 42 Pa.C.S. § 706 (relating to disposition of appeals).

*Id.* § 704. Parole revocation hearings are subject to these standards. *Smith v. Pennsylvania Bd. of Probation and Parole,* 524 Pa. 500, 574 A.2d 558, 561 (1990) (noting that Board is governed by Administrative Law and Procedure Act and thus relevant standard of review on appeal is found in 2 Pa.C.S. § 704). *See also Davidson v. Pa. Bd. of Prob. and Parole,* 667 A.2d 1206, 1208, n. 4 (Pa.Cmwlth.1995) (*citing* 2 Pa.C.S. § 704); *Dennis v. Pa. Bd. of Prob. and Parole,* 110 Pa.Cmwlth. 517, 532 A.2d 1230, 1232 (1987); *but see Rogers v. Pennsylvania Bd. of Probation and Parole,* 555 Pa. 285, 724 A.2d 319, 323 (1999) (no right to appellate review "from a Parole Board decision denying parole under either the Administrative Agency Law or the Federal Constitution"). The Commonwealth Court panel majority essentially found that the Board's waiver determination was not in accordance with law. That finding was a purely legal one, and thus, this Court's review of the Commonwealth Court determination is plenary. *In re Adoption of J.E.F.,* 587 Pa. 650, 902 A.2d 402, 407 (2006).

The Board has established a two-tiered procedure for making parole revocation decisions. First, a factual record is made and an initial decision is rendered at a parole revocation hearing. A parolee can then appeal this decision to the Board by filing for administrative relief. *See* 37 Pa.Code § 71.1 *et seq. Accord* 2 Pa.C.S. § 101 *et seq.*

At the initial revocation hearing, the parolee has the right to have his case heard by a panel; however, he may waive that right and proceed before a hearing examiner. The purpose of the hearing is to determine whether the parolee's actions warrant the revocation of his parole. 37 Pa.Code § 71.4(2)(v). The panel (or the examiner) is charged with creating a record of the relevant facts, established by witnesses who testify and evidence that is introduced by both parties. *See* 2 Pa.C.S. § 504 ("a full and complete record shall be kept of the proceedings"); 37 Pa.Code § 71.5(b) ("documentary evidence and reports, including, but not limited to, depositions, written interrogatories, affidavits, laboratory reports, business records, public records, official records and letters rogatory, may

be utilized solely, if the panel or examiner is satisfied as to their authenticity, relevancy, accuracy and reliability."); 2 Pa.C.S. § 504 ("all testimony shall be stenographically recorded").[8] The parolee has the right to be represented by counsel and the right to be present throughout the proceedings. 37 Pa.Code § 71.4(5), (6). Upon completion of the hearing, a determination is made as to whether the revocation of parole is warranted.

If the parolee appeals that determination, the parolee is required to present his claims with "accuracy, brevity, clearness, and specificity" in his petition for administrative relief. *Id.* § 73.1(b)(2). The Board reviews the examiner's (or panel's) decision to determine whether it is supported by substantial evidence, whether any error of law has been committed, or whether there have been any violations of constitutional law. *Id.* § 73.1(a)(2). This system of administrative review allows the Board to act in a manner similar to an appellate court. If there is a need for a more extensive factual record, the Board may remand the matter to the hearing level for additional evidence. The Board then determines whether there is merit to the parolee's claims and thereafter issues an order affirming, reversing, or remanding the determination.

■ As a general and theoretical matter, we see no difficulty or impediment in the Board adopting a policy which would require a parolee to raise any and all ripe claims at the initial hearing level. Such a system of review would streamline the administrative procedure, and ensure a focus on the hearing as the main event, with Board review available to correct the sorts of errors normally the subject of appellate review. Such a system would mirror, within the administrative level, the sort of review that exists once a matter passes from the agency to the courts. Thus, the Administrative Law and Procedure Act provides that:

**8.** Pursuant to the Administrative Law and Procedures Act, the hearing is not subject to the "technical rules of evidence" as "all relevant evidence of reasonably probative value may be received." 2 Pa.C.S. § 554.

if a full and complete record of the proceedings before the agency was made such party may not raise upon appeal any other question not raised before the agency (notwithstanding the fact that the agency may not be competent to resolve such question) unless allowed by the court upon due cause shown.

2 Pa.C.S. § 753; *see also id.* at § 754 ("In the event a full and complete record of the proceedings before the local agency was not made, the court may hear the appeal de novo, or may remand the proceedings to the agency for the purpose of making a full and complete record or for further disposition in accordance with the order of the court"); 2 Pa.C.S. § 703; [9] *Lewis v. Civil Service Comm'n,* 518 Pa. 170, 542 A.2d 519, 522 n. 3 (1988)(citing 2 Pa.C.S. § 703). This Court has upheld these requirements in various administrative settings. *See Wing v. Commonwealth of Pa., Unemployment Comp. Bd.,* 496 Pa. 113, 436 A.2d 179, 181 (1981) ("waiver rule is perfectly appropriate in unemployment compensation proceedings."). *See also United States Steel Corp. (USX Clairton Works) v. Unemployment Comp. Bd. of Review,* 579 Pa. 618, 858 A.2d 91, 96 n. 4 (2004) (claim waived where not raised before referee or Unemployment Compensation Board of Review); *Rox Coal Co. v. Workers' Comp. Appeal Bd. (SNIZASKI),* 570 Pa. 60, 807 A.2d 906, 914 (2002) (failure to claim before Workers' Compensation Judge that 1993 statutory amendments to law eliminated an exception in previous version of act rendered claim waived). *Accord B.E. Re G.M. Jr. v. Dep't. of Public Welfare,* 654 A.2d 290, 292 (Pa.Cmwlth.1995) (claim that Children and Youth agency failed to demonstrate that suspect actions fell within definition of child abuse waived because not raised before Department of Public Welfare's hearing officer); *Rodgers v. Pa. State Police,* 759 A.2d 424,

9. 2 Pa.C.S. § 703 provides in relevant part:

(a) General rule.—A party who proceeded before a Commonwealth agency under the terms of a particular statute shall not be precluded from questioning the validity of the statute in the appeal, but such party may not raise upon appeal any other question not raised before the agency (notwithstanding the fact that the agency may not be competent to resolve such question) unless allowed by the court upon due cause shown.

431 (Pa.Cmwlth.2000), *appeal denied,* 565 Pa. 658, 771 A.2d 1292 (2001) (claim of bias on part of hearing officer waived because not raised before hearing officer).

The Board is correct that requiring a parolee to raise all claims before the administrative fact finder in order to preserve them for administrative appellate review is consistent with the appellate process in civil and criminal cases. In *Dilliplaine,* 457 Pa. 255, 322 A.2d 114, this Court abrogated the judicial rule that certain claims of "basic and fundamental error" could be pursued on appeal even if they had not been raised before the trial court. *Id.* at 117. In requiring that parties must raise claims of trial court error before the trial court in order to preserve them for appellate review, we noted that:

Appellate court consideration of issues not raised in the trial court results in the trial becoming merely a dress rehearsal. This process removes the professional necessity for trial counsel to be prepared to litigate the case fully at trial and to create a record adequate for appellate review. The ill-prepared advocate's hope is that an appellate court will come to his aid after the fact and afford him relief despite his failure at trial to object to an alleged error. The diligent and prepared trial lawyer—and his client—are penalized when an entire case is retried because an appellate court reverses on the basis of an error opposing counsel failed to call to the trial court's attention. Failure to interpose a timely objection at trial denies the trial court the chance to hear argument on the issue and an opportunity to correct error. It also tends to postpone unnecessarily disposition of other cases not yet tried for the first time.

. . . .

The notion of basic and fundamental error not only erodes the finality of the trial court holdings, but also encourages unnecessary appeals and thereby further burdens the decisional capacity of our appellate courts.

. . . .

Requiring a timely specific objection to be taken in the trial court will ensure that the trial judge has a chance to correct

alleged trial errors. This opportunity to correct alleged errors at trial advances the orderly and efficient use of our judicial resources. First, appellate courts will not be required to expend time and energy reviewing points on which no trial ruling has been made. Second, the trial court may promptly correct the asserted error. With the issue properly presented, the trial court is more likely to reach a satisfactory result, thus obviating the need for appellate review on this issue. Or if a new trial is necessary, it may be granted by the trial court without subjecting both the litigants and the courts to the expense and delay inherent in appellate review. Third, appellate courts will be free to more expeditiously dispose of the issues properly preserved for appeal. Finally, the exception requirement will remove the advantage formerly enjoyed by the unprepared trial lawyer who looked to the appellate court to compensate for his trial omissions.

*Id.* at 116–17 (footnotes and citations omitted).

This Court subsequently expanded the rule of *Dilliplaine* to apply to situations where an objection was made timely at trial but the remedy sought on appeal was not requested of the trial judge. *See Tagnani v. Lew,* 493 Pa. 371, 426 A.2d 595, 597 (1981) (holding "no legitimate basis for distinction may be found between the situation where the claim is not timely raised and where the remedy sought was not timely pursued."). This Court has also applied the contemporaneous objection/issue preservation rule in criminal cases. *See Commonwealth v. Lopez,* 455 Pa. 353, 318 A.2d 334, 336 (1974) (appellant waived his claim that his arrest was illegal by failing to raise it until post-trial motions); *Commonwealth v. Clair,* 458 Pa. 418, 326 A.2d 272, 274 (1974) (failing to object at trial rendered appellant's claims waived). Furthermore, the rule is now codified in our Rules of Appellate Procedure. *See* Pa.R.A.P. 302, 1551.

We have no doubt that the rationale for requiring timely objection at the initial hearing level—giving the initial tribunal the opportunity to correct its mistakes, promoting diligent preparation by trial attorneys, avoiding appeals and encourag-

ing the finality of initial decisions—is resonant within the administrative law review context, and within the parole revocation setting. *See Wing*, 436 A.2d at 181 (outlining rationale for applying issue preservation rule to administrative law cases); *see also DeMarco v. Jones & Laughlin Steel Corp.*, 513 Pa. 526, 522 A.2d 26, 29 (1987) (Opinion Announcing the Judgment of the Court) (rationale of *Dilliplaine* is "perfectly apposite in administrative law cases"). This is particularly so where, as here, the party has counsel at the initial hearing.

██ We are unpersuaded by appellee's argument that the nature of a parole revocation proceeding is such that an issue preservation requirement cannot apply. It is true that a revocation proceeding is not a full-blown trial; but that fact hardly means that the Board cannot adopt a procedure to focus and streamline revocation matters. Likewise, the fact that prejudice may be presumed in a case where a hearing is untimely through no fault of the parolee, as well as the alleged fact that the Board has available to it the raw record dates that would form the basis for a claim that the hearing was untimely, hardly excuses a failure to forward a timeliness claim at the first opportunity. Indeed, the basic and fundamental error doctrine abrogated in the *Dilliplaine* line of cases also involved issues that were claimed to be apparent from the face of the record. Part of the point, at least, for requiring contemporaneous objection is to ensure a prompt, trial level resolution of cases, and to thereby avoid the time and cost of unnecessary appeals. Moreover, appellee's argument is flawed as a factual matter because the Board's obligation to prove timeliness attaches only after a timeliness challenge has actually been forwarded. *See Johnson v. Pa. Bd. of Prob. and Parole*, 890 A.2d 45, 49 (Pa.Cmwlth.2006) ("When the timeliness of a hearing is challenged, the Board bears the burden of proving by a preponderance of the evidence that the hearing was timely."). Requiring an objection at the hearing level ensures that a record will exist to evaluate whether the Board has met its burden. In short, there is no logical reason why the Board cannot require a parolee to raise his claims at the initial hearing. As the

Supreme Court of the United States has accurately recognized, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo,* —— U.S. ——, ——, 126 S.Ct. 2378, 2386, 165 L.Ed.2d 368 (2006); *see also Shenango Valley Osteopathic Hospital v. Dept. of Health,* 499 Pa. 39, 451 A.2d 434, 438 (1982) ("an unjustified failure to follow the administrative scheme undercuts the foundation upon which the administrative process was founded").

■ The fact that we see no impediment in the Board ┊ adopting a *Dilliplaine*-like requirement at the administrative hearing level, however, does not resolve this appeal. The Board's argument is that *Dilliplaine* itself **requires** such a rule and that the Commonwealth Court lacked "power" to hold otherwise. This is not so. *Dilliplaine* did not delve into the administrative law arena, and the issue preservation rule this Court adopted in the *Dilliplaine* line was a function of our rulemaking authority for the judicial system. It is one thing to say that an administrative agency **may** adopt an internal issue preservation requirement, and quite another to say that a judicial doctrine **requires** that such a procedural rule be adopted or employed by an agency. In short, *Dilliplaine* and its progeny do not independently require that a defendant raise any and all issues at the parole revocation hearing level. That requirement, if there is to be any, is for the Board to determine, at least as an initial matter.[10]

The Board does not argue that its existing regulations set forth a requirement (and thereby provide notice of the requirement) that claims must be raised and preserved at the revocation hearing level, or be deemed waived. Instead, the

10. Our recognition that it is for the relevant agency to determine whether and how to properly raise and exhaust a claim does not mean that this Court cannot require that, for purposes of **subsequent judicial review,** the claim must have been raised at the appropriate administrative level. The point, however, is that the question of the proper manner of issue preservation **within** the administrative level is not ineluctably subject to dictation by the judiciary.

Board cites the *Dilliplaine* legal theory as its sole basis for arguing that the Commonwealth Court must be deemed to have erred. On the other hand, appellee argues that there are cases from the Commonwealth Court which suggest that a parolee adequately preserves a claim if he raises it **either** at the hearing level or the administrative appeal level. Brief for Appellee, 3, citing *Dear*, 686 A.2d at 426 ("Because the notice issue was not raised before the Board in either the revocation hearing or in Dear's administrative appeal, the issue has been waived and cannot be considered for the first time in his judicial appeal."); *Newsome*, 553 A.2d at 1052 (claims not raised before Board either at revocation hearing or in administrative appeal are waived). The panel majority below agreed with this position, and indeed, supported its finding that no waiver occurred with a citation to these same cases. *See* slip. op. at 5.

We are not so certain as appellee that the cases he cites support his position. A notation that a claim was not raised at either administrative level and is therefore waived does not necessarily mean that it would have been preserved if it had been raised at either, rather than both, of the available levels of administrative review. Moreover, although the matter is not entirely clear, this Court's research has unearthed other cases from the Commonwealth Court—cited by neither party—which at least seem to suggest that a *Dilliplaine*-like waiver has been employed on occasion in the administrative parole revocation setting. *See e.g. Hobson v. Pa. Bd. of Prob. and Parole*, 125 Pa.Cmwlth. 38, 556 A.2d 917, 918 (1989) (claim that hearing examiner was biased failed because parolee cannot complain of deficiency regarding hearing after hearing has been held); *Donnelly v. Pa. Bd. of Prob. and Parole*, 72 Pa.Cmwlth. 290, 457 A.2d 145, 146 (1983) (claim that detention hearing was untimely fails because parolee failed to raise claim prior to revocation hearing); *Whittington v. Pa. Bd. of Prob. and Parole*, 45 Pa.Cmwlth. 58, 404 A.2d 782, 783 (1979) ("the failure to hold a timely detention hearing in the absence of a timely objection in no way affects the validity of a subsequent revocation hearing"). *Cf. Commonwealth v. Per-*

*ry*, 254 Pa.Super. 48, 385 A.2d 518, 520 (1978) ("If before his parole or probation is revoked a parolee or probationer has not complained of the lack of a *Gagnon I* [11] hearing, he has already suffered the harm that the omission allegedly caused; since the substance of the revocation proceeding is not affected by the omission, the parolee or probationer will not be heard to complain later.").[12]

Since the Board confines itself to its *Dilliplaine*-based argument, we need not and will not resolve whether appellee's claim could be deemed waived under an independent waiver doctrine properly adopted by the Board. It is enough to note that, although it might be proper and salutary for the Board to adopt a *Dilliplaine*-like issue preservation requirement in the administrative parole revocation setting, we reject the Board's invitation to hold that *Dilliplaine* itself commands a finding of waiver here. Finding no merit in the waiver argument as forwarded by the Board, we affirm the Commonwealth Court's decision, albeit for different reasons than were articulated below.

Chief Justice CAPPY, and Justice NEWMAN, Justice SAYLOR, EAKIN and BAER and Justice BALDWIN join the opinion.

---

11. *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). "In *Gagnon*, the United States Supreme Court held that due process requires that a probationer, like a parolee, be given a preliminary (*Gagnon I*) and a final (*Gagnon II*) hearing prior to revoking probation." *Commonwealth v. Parker*, 531 Pa. 90, 611 A.2d 199, 201 n. 2 (1992) (citing *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (regarding parole revocations)).

12. *Hobson, Donnelly*, and *Whittington* all cite to the *Perry* case. We recognize that, to the extent those decisions are powered by *Gagnon* concerns, they may not strictly be on point, in light of current administrative practices.