**John Scott JACOBS, Petitioner**

v.

**PENNSYLVANIA BOARD OF PROBATION AND PAROLE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 1, 2008.

Decided Oct. 22, 2008.

Harry J. Cancelmi, Jr., Waynesburg, for petitioner.

Arthur R. Thomas, Asst. Counsel and Victoria S. Madden, Chief Counsel, Harrisburg, for respondent.

BEFORE: McGINLEY, Judge, COHN JUBELIRER, Judge, and BUTLER, Judge.

OPINION BY Judge COHN JUBELIRER.

John Scott Jacobs (Jacobs) petitions for review of an order of the Pennsylvania Board of Probation and Parole (Board), which affirmed his recommitment as a convicted parole violator. Jacobs asks this Court to determine whether the Board erred in concluding that he waived his challenge to the timeliness of his parole revocation hearing by failing to raise that issue during the hearing itself. For the reasons discussed herein, we vacate the order of the Board and remand this matter for further proceedings consistent with this opinion.

The relevant facts in this case are as follows. On December 15, 2003, Jacobs was paroled from his original 12 to 27–year sentence. At that time, Jacobs' maximum sentence date was November 20, 2017.

On January 12, 2005, Jacobs was arrested and charged with attempted burglary, criminal trespass, and possession of an instrument of crime. As a result, the Board lodged a warrant to commit and detain Jacobs for violating the terms of his parole. By decision dated February 23, 2005, the Board directed that Jacobs be detained pending the disposition of his criminal charges. Thereafter, by decision dated May 19, 2005, the Board recommitted Jacobs as a technical parole violator to serve nine months backtime, when available.

On July 6, 2005, Jacobs was found guilty of attempted burglary and possession of an instrument of crime. Jacobs was confined in a state correctional institution beginning on July 15, 2005. Jacobs was later granted a new trial; however, on February 9, 2006, Jacobs was again found guilty of attempted burglary and possession of an instrument of crime.

On May 9, 2007, the Board held a parole revocation hearing during which Jacobs, who was unrepresented by counsel, did not object to the timeliness of the hearing. By decision dated July 18, 2007, the Board recommitted Jacobs as a convicted parole violator to serve a total of 15 months backtime, and the Board recalculated Jacobs' maximum sentence date as June 20, 2019.

■ Jacobs, after obtaining counsel, subsequently filed an administrative appeal in which he asserted, for the first time, that the Board did not hold his parole revocation hearing within 120 days of the official verification date of his conviction.[1] By decision dated January 28, 2008,

---

1. Jacobs also asserted that he had not received a recalculation order and that his maximum sentence date was incorrect. In response to these assertions, the Board stated:
 [O]n January 4, 2008, the Board mailed Mr. Jacobs a modified recalculation decision indicating that his max date was changed from June 20, 2019 to January 17, 2020. This change was made to reflect that the period Mr. Jacobs was incarcerated from July 14, 2005 to February 10, 2006 must be applied to his new sentence as opposed to his original sentence. A copy of this decision and the PBPP 39 form is enclosed for your reference. Thus, your objection to the prior June 20, 2019 max date is now moot.

(Board Decision, January 28, 2008.) Jacobs filed an administrative appeal of the Board's January 4, 2008 modified recalculation decision; however, the Board denied the appeal as untimely. Jacobs subsequently filed a petition for review of the Board's January 4, 2008 modified recalculation decision with this Court, which was docketed at No. 548 C.D. 2008. The Board then filed an application for remand, which was granted by this Court in an order dated May 14, 2008. Jacobs, in his petition for review and brief in the present case, raises additional issues regarding credit and his maximum sentence date. However, as Jacobs correctly acknowledges in his brief, those issues are part of the subject matter of

the Board affirmed Jacobs' recommitment as a convicted parole violator. In its decision, the Board stated:

A review of the record reflects that Mr. Jacobs did not raise a timeliness objection at the revocation hearing. As a result, that issue was not addressed at the hearing. Therefore, he waived his right to raise that issue on appeal. *Wallace v. Pennsylvania Board of Probation and Parole,* 119 Pa.Cmwlth. 508, 548 A.2d 1291 (1988).

(Board Decision, January 28, 2008.) Jacobs now petitions this Court for review.[2]

On appeal, Jacobs argues that the Board erred in determining that he waived his challenge to the timeliness of his parole revocation hearing. Jacobs acknowledges that he did not challenge the timeliness of his parole revocation hearing during the hearing itself. However, relying on *Goods v. Pennsylvania Board of Probation and Parole,* 590 Pa. 132, 912 A.2d 226 (2006), Jacobs contends that he adequately preserved this issue by raising it in his administrative appeal to the Board because the Board has not accepted the Supreme Court's invitation to adopt a regulation requiring issue preservation at the parole revocation hearing level. Jacobs further contends that the docket sheet entered into the record by the prosecuting agent establishes that the Fayette County Clerk of Courts notified the Board of Jacobs' new conviction on May 22, 2006, but that a parole revocation hearing was not held until May 9, 2007. Thus, Jacobs contends that there is no need for a remand hearing and that the Board's decision should simply be reversed.

In response, the Board argues that it did not err in determining that Jacobs waived his challenge to the timeliness of his parole revocation hearing. Relying on this Court's decisions in *Plummer v. Pennsylvania Board of Probation and Parole,* 926 A.2d 561 (Pa.Cmwlth.2007), and *Wallace,* the Board contends that Jacobs waived his challenge to the timeliness of his parole revocation hearing by failing to raise such challenge during the hearing itself. The Board also contends that Jacobs' reliance on *Goods* is misplaced because the narrow holding of the Supreme Court in that case was that *Dilliplaine v. Lehigh Valley Trust Co.,* 457 Pa. 255, 322 A.2d 114 (1974), which requires that objections in the context of proceedings before a trial court must be raised at the earliest possible time, does not command a finding of waiver where a parolee fails to preserve an issue at his parole revocation hearing. The Board contends that the Supreme Court was not foreclosing the possibility that waiver could be found on the basis of other case precedent. In support of this contention, the Board notes that, in *Goods,* the Supreme Court cited to *Hobson v. Pennsylvania Board of Probation and Parole,* 125 Pa.Cmwlth. 38, 556 A.2d 917 (1989), *Donnelly v. Pennsylvania Board of Probation and Parole,* 72 Pa.Cmwlth. 290, 457 A.2d 145 (1983), and *Whittington v. Pennsylvania Board of Probation and Parole,* 45 Pa.Cmwlth. 58, 404 A.2d 782 (1979), as examples of cases in which it appeared that a finding of waiver had been made as a result of a parolee's failure to raise an issue at the hearing level. The Board contends that *Plummer, Wallace,*

the case which is now before the Board on remand. Therefore, this Court will not address those issues at this time.

**2.** "This Court's scope of review of a decision by the Board is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether the constitutional rights of the parolee [were] violated." *Armbruster v. Pennsylvania Board of Probation and Parole,* 919 A.2d 348, 350 n. 1 (Pa.Cmwlth. 2007).

*Hobson, Donnelly,* and *Whittington* support the proposition, on a basis other than *Dilliplaine,* that a parolee waives any issues not raised during his parole revocation hearing. The Board further contends that, even assuming that it erred in determining that Jacobs waived his challenge to the timeliness of his parole revocation hearing, the present matter should be remanded to the Board for a hearing on the timeliness issue. According to the Board, the docket sheet referred to by Jacobs is not sufficient to establish when the Board received "official verification" of his conviction.

■ We begin our review by examining the Supreme Court's decision in *Goods.* In that case, a parolee was arrested on new criminal charges after he had been reparoled numerous times from his original sentence. *Goods,* 590 Pa. at 134–35, 912 A.2d at 227. On December 19, 2002, the parolee pled guilty to the new criminal charges. *Id.* at 135, 912 A.2d at 227. The Board ultimately held a parole revocation hearing on January 5, 2004, during which the parolee did not object to the timeliness of the hearing. *Id.* at 135, 912 A.2d at 228. After the Board issued a decision recommitting the parolee as a parole violator, the parolee filed an administrative appeal alleging that the Board had failed to conduct his parole revocation hearing in a timely manner. *Id.* at 136, 912 A.2d at 228. The Board denied the parolee's appeal, finding that he had waived any objection to the timeliness of his parole revocation hearing by failing to raise that issue at the hearing itself. *Id.* The parolee subsequently appealed the Board's decision to this Court. *Id.*

On appeal, a divided panel of this Court determined that the parolee had preserved his challenge to the timeliness of his parole revocation hearing by raising it in his administrative appeal to the Board. *Id.* Ac-

cordingly, this Court vacated the Board's decision and remanded the matter to the Board to hold an evidentiary hearing and determine the merits of the timeliness issue. *Id.* at 137, 912 A.2d at 228–29. The Board appealed this Court's decision, arguing that it was inconsistent with *Dilliplaine,* and the Supreme Court granted review. The Supreme Court ultimately affirmed this Court's decision, opining as follows:

> As a general and theoretical matter, we see no difficulty or impediment in the Board adopting a policy which would require a parolee to raise any and all ripe claims at the initial hearing level. . . .
>
> . . . .
>
> The fact that we see no impediment in the Board adopting a *Dilliplaine*-like requirement at the administrative hearing level, however, does not resolve this appeal. The Board's argument is that *Dilliplaine* itself **requires** such a rule and that the Commonwealth Court lacked "power" to hold otherwise. This is not so. *Dilliplaine* did not delve into the administrative law arena, and the issue preservation rule this Court adopted in the *Dilliplaine* line was a function of our rulemaking authority for the judicial system. It is one thing to say that an administrative agency **may** adopt an internal issue preservation requirement, and quite another to say that a judicial doctrine requires that such a procedural rule be adopted or employed by an agency. In short, *Dilliplaine* and its progeny do not independently require that a defendant raise any and all issues at the parole revocation hearing level. That requirement, if there is to be any, is for the Board to determine, at least as an initial matter.
>
> *The Board does not argue that its existing regulations set forth a require-*

*ment (and thereby provide notice of the requirement) that claims must be raised and preserved at the revocation hearing level, or be deemed waived.* Instead, the Board cites the *Dilliplaine* legal theory as its sole basis for arguing that the Commonwealth Court must be deemed to have erred. On the other hand, appellee argues that there are cases from the Commonwealth Court which suggest that a parolee adequately preserves a claim if he raises it either at the hearing level or the administrative appeal level. Brief for Appellee, 3, citing *Dear [v. Pennsylvania Board of Probation and Parole]*, 686 A.2d [423, 426 (Pa.Cmwlth. 1996) ]* ("Because the notice issue was not raised before the Board in either the revocation hearing or in Dear's administrative appeal, the issue has been waived and cannot be considered for the first time in his judicial appeal."); *Newsome [v. Pennsylvania Board of Probation and Parole]*, 123 Pa.Cmwlth. 413, 553 A.2d [1050, 1052 (1989) ]* (claims not raised before Board either at revocation hearing or in administrative appeal are waived). The panel majority below agreed with this position, and indeed, supported its finding that no waiver occurred with a citation to these cases.

We are not so certain as appellee that the cases he cites support his position. A notation that a claim was not raised at either administrative level and is therefore waived does not necessarily mean that it would have been preserved if it had been raised at either, rather than both, of the available levels of administrative review. Moreover, although the matter is not entirely clear, this Court's research has unearthed other cases from the Commonwealth Court—cited by neither party—which at least seem to suggest that a *Dilliplaine*-like waiver has been employed on occasion in the administrative parole revocation setting. *See,*

*e.g., Hobson,* [556 A.2d at 918] (claim that hearing examiner was biased failed because parolee cannot complain of deficiency regarding hearing after hearing has been held); *Donnelly,* [457 A.2d at 146] (claim that detention hearing was untimely fails because parolee failed to raise claim prior to revocation hearing); *Whittington,* [404 A.2d at 783] ("the failure to hold a timely detention hearing in the absence of a timely objection in no way affects the validity of a subsequent revocation hearing")....

*Since the Board confines itself to its Dilliplaine-based argument, we need not and will not resolve whether appellee's claim could be deemed waived under an independent waiver doctrine properly adopted by the Board. It is enough to note that, although it might be proper and salutary for the Board to adopt a Dilliplaine-like issue preservation requirement in the administrative parole revocation setting, we reject the Board's invitation to hold that Dilliplaine itself commands a finding of waiver here.* Finding no merit in the waiver argument as forwarded by the Board, we affirm the Commonwealth Court's decision, albeit for different reasons than were articulated below.

*Goods,* 590 Pa. at 143–149, 912 A.2d at 233–37 (footnotes and citations omitted) (italicized emphasis added).

While the Board here contends that the Supreme Court's holding in *Goods* was limited to *Dilliplaine* and that the Supreme Court was not foreclosing the possibility that waiver could be found on the basis of other case precedent, we disagree. The Supreme Court has characterized its holding in *Goods* as being that "while Dilliplaine waiver may be utilized in the administrative context, it does not apply to administrative proceedings absent [a] statute or regulation providing for preservation

and waiver within the administrative framework." *Station Square Gaming LP v. Pennsylvania Gaming Control Board,* 592 Pa. 664, 677, 927 A.2d 232, 240 (2007); *Pocono Manor Investors, LP v. Pennsylvania Gaming Control Board,* 592 Pa. 625, 639, 927 A.2d 209, 217 (2007). Thus, we believe that the Supreme Court has made it clear that an issue preservation requirement, which would require issues to be raised at the hearing level or be deemed waived, may not be judicially imposed into the Board's internal review process.

Although the Supreme Court, in *Goods,* cited to *Hobson, Donnelly,* and *Whittington* as examples of other cases in which a *Dilliplaine*-like waiver requirement has been employed in the administrative parole revocation setting, we do not believe that the Supreme Court was giving approval to the Board, going forward, to rely on those cases to support a finding of waiver when faced with a factual situation like the one presented here and in *Goods.* In fact, the Supreme Court noted that *Hobson, Donnelly,* and *Whittington* may not be on point because they deal with concerns related to *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973).[3] *Goods,* 590 Pa. at 150 n. 12, 912 A.2d at 237 n. 12.

Based on our own review of *Hobson, Donnelly,* and *Whittington,* we believe that those cases are distinguishable from the present case and *Goods.* In *Hobson, Donnelly,* and *Whittington,* the parolees were raising challenges to the timeliness of their preliminary detention hearings, which they had not raised before their final revocation hearings. In responding to the challenges that were raised in all three of these cases, this Court cited to *Commonwealth v. Perry,* 254 Pa.Super. 48, 385 A.2d 518 (1978), in which the Superior Court stated:

> The purpose of the requirement of a *Gagnon* I hearing is different: it is to ensure against detention on allegations of violations that have no foundation of probable cause. If before his parole or probation is revoked a parolee or probationer has not complained of the lack of a *Gagnon* I hearing, he has already suffered the harm that the omission allegedly caused; since the substance of the revocation proceeding is not affected by the omission, the parolee or probationer will not be heard to complain later.

*Perry,* 385 A.2d at 520. Relying on *Perry,* this Court, in *Hobson, Donnelly,* and *Whittington,* held that the parolees had waived their challenges to the timeliness of their preliminary detention hearings by failing to raise such challenges prior to their parole revocation hearings. *Hobson,* 556 A.2d at 918; *Donnelly,* 457 A.2d at 146–47; *Whittington,* 404 A.2d at 783. However, unlike the timeliness challenges raised in *Hobson, Donnelly,* and *Whittington,* the timeliness challenges raised in the present case and in *Goods* were with regard to the timeliness of *parole revocation hearings,* not *preliminary detention hearings.* Thus, even in the absence of the Supreme Court's holding in *Goods,* we do not believe that *Hobson, Donnelly,* and *Whittington* directly support a finding of waiver where, as here and in *Goods,* a challenge to the timeliness of a parole revocation hearing was not made at the hearing itself, but was made in the administrative appeal to the Board.

**3.** "In *Gagnon,* the United States Supreme Court held that due process requires that a probationer, like a parolee, be given a preliminary (*Gagnon I*) and a final (*Gagnon II*) hearing prior to revoking probation." *Commonwealth v. Parker,* 531 Pa. 90, 92 n. 2, 611 A.2d 199, 200 n. 2 (1992) (citing *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)).

We also believe that the Board's reliance on *Wallace* is misplaced because that case was decided prior to *Goods*. Further, even in the absence of *Goods*, we believe that *Wallace* is distinguishable from the present case. In *Wallace*, a parolee asserted that he was denied due process because he was not provided with advance notice of his parole revocation hearing, but this Court held that the parolee waived his due process challenge. *Wallace*, 548 A.2d at 1293. In so holding, this Court noted that the parolee did not raise this issue at his parole revocation hearing and then explained that "[w]here a parolee fails to raise an issue before the Board, it is considered waived and cannot be raised for the first time on judicial review." *Id.* at 1293 (citing Section 703(a) of the Administrative Agency Law, 2 Pa.C.S. § 703(a)). However, it is unclear whether the parolee in *Wallace* raised his due process challenge, at all, in his administrative appeal to the Board.[4] Given that this Court, in finding waiver in *Wallace*, relied solely on Section 703(a) of the Administrative Agency Law, which only sets forth an issue preservation requirement for issues appealed from an administrative agency to this Court, we believe that this Court found that the parolee had waived his due process challenge because it was *never* raised to the Board. Thus, even in the

absence of *Goods*, we believe that *Wallace* does not support the Board's waiver finding in the present case.

Furthermore, while the Board also relies on *Plummer*, which was decided after *Goods*, to support its waiver finding, we believe that such reliance is equally misplaced. In *Plummer*, a parolee challenged the timeliness of his parole revocation hearing, and his counsel sought leave to withdraw as counsel as to that issue. 926 A.2d at 563–64. In seeking leave to withdraw, the parolee's counsel acknowledged that no reference or objection was made to the timeliness of the parole revocation hearing at the hearing itself. *Id.* at 564. The parolee's counsel also acknowledged that the criminal arrest and disposition report contained in the record established that a parole revocation hearing had been held in a timely manner. *Id.* This Court then held:

> Because the record supports the conclusion that, even if [the parolee] had not waived the issue, the Board provided a hearing within the required 120–day period, we agree with the Board that, not only did [the parolee] waive the issue, but it is also without merit, and therefore, counsel is permitted to withdraw as to this issue.

4. The specific language used by this Court in *Wallace* was as follows:

> First, [the parolee] maintains that he was denied the right of due process as the Board did not provide him with advance notice of his violation hearing. We have reviewed the record, however, and have found that this issue was not raised by [the parolee] at his violation hearing. Where a parolee fails to raise an issue before the Board, it is considered waived and cannot be raised for the first time on judicial review.
>
> [The parolee] asserts, however, that his hearing counsel was ineffective, and that the appeal now before this Court is his first

> opportunity to raise the notice issue. We do not agree. While this Court has in the past held that an issue may be raised for the first time on appeal here, it has only been where the facts warranted such extraordinary consideration. In the case before us, however, [the parolee] proceeded *pro se* during his administrative appeal and did not challenge the sufficiency of the violation hearing notice on the basis of ineffective assistance of counsel. Therefore, [the parolee] has not only waived the notice issue, he has also waived any claim that his violation hearing counsel was ineffective.
>
> *Wallace*, 548 A.2d at 1293 (citations omitted).

*Id.* Unlike in *Plummer*, where the parolee's counsel conceded that the parole revocation hearing was held within 120 days of the parolee's new conviction, and the Court did not need to consider the affect of *Goods*, here Jacobs has specifically called the applicability of *Goods* into question.[5]

If we were to affirm the Board's waiver finding on the basis of the cases to which it cites, we would essentially be judicially imposing the principles of *Dilliplaine* on the Board, just using different case names to do so. Thus, in complying with the Supreme Court's holding in *Goods*, we must decline to judicially impose an issue preservation requirement into the Board's internal review process. While Section 703(a) of the Administrative Agency Law requires that an issue must be raised at some point to the Board before we may address it on appeal, we cannot *require* that the Board adopt a similar requirement within its own administrative framework. As best stated by our Supreme Court, "[t]hat requirement, if there is to be any, is for the Board to determine, at least as an initial matter." *Goods*, 590 Pa. at 148, 912 A.2d at 236. Here, the Board does not assert that there is a statute or regulation requiring that an issue must be raised at the parole revocation hearing or be deemed waived, and we are not independently aware of any such statute or regulation. Therefore, in the absence of such a requirement, we agree with Jacobs that the Board erred in determining that he waived his challenge to the timeliness of his parole revocation hearing by failing to raise such challenge at the hearing itself.

■ Finally, although we agree with Jacobs that the Board erred in finding that he waived his timeliness challenge, we disagree that the docket sheet entered into

the record by the prosecuting agent establishes that Jacobs' parole revocation hearing was untimely. Before a parolee who is confined within the jurisdiction of the Department of Corrections is recommitted as a convicted parole violator, the Board must hold "a revocation hearing ... within 120 days from the date the Board received official verification of the plea of guilty or nolo contendere or of the guilty verdict at the highest trial court level." 37 Pa.Code § 71.4(1). "Official verification" is defined as "[a]ctual receipt by a parolee's supervising parole agent of a direct written communication from a court in which a parolee was convicted of a new criminal charge attesting that the parolee was so convicted." 37 Pa.Code § 61.1. Here, as the Board correctly asserts, the docket sheet entered into the record by the prosecuting agent does not establish when the parolee's supervising agent actually *received* a direct written communication from the Court of Common Pleas of Fayette County attesting to Jacobs' new conviction. Therefore, because there is no evidence contained in the record regarding when the Board *received* "official verification" of Jacobs' conviction, this matter must be remanded to the Board.

Accordingly, for the reasons discussed above, the Board's order affirming Jacobs' recommitment as a convicted parole violator is vacated, and this matter is remanded to the Board to hold an evidentiary hearing and render a decision as to the merits of Jacobs' challenge to the timeliness of his parole revocation hearing.

### *ORDER*

NOW, October 22, 2008, the order of the Pennsylvania Board of Probation and Pa-

---

5. We note that, in *Plummer*, this Court held that the hearing was timely; thus, any discussion of waiver was dicta.

role in the above-captioned matter is hereby vacated, and this matter is remanded to the Board to hold an evidentiary hearing and render a decision as to the merits of Jacobs' challenge to the timeliness of his parole revocation hearing.

Jurisdiction relinquished.